IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Case No. 5:15-cr-00011 |
| | ) | |
| OWEN F. SILVIOUS | ) | |

**MEMORANDUM OPINION**

Defendant Owen F. Silvious, who is currently serving a term of supervised release and being supervised by the United States Probation Office in this district, recently filed a pro se motion titled as a "Motion for Order Directing United States Attorney to Stop Deducting Funds from my Social Security Benefits." (Dkt. No. 28.) The motion has been fully briefed. Silvious has requested a hearing, the United States opposes any hearing, and the court concludes that no hearing on the motion is necessary. For the reasons discussed herein, the motion will be denied.

I. BACKGROUND

Silvious's restitution obligations in this criminal case are significant. In 2005, he was convicted of five counts of mail fraud and sentenced in the Eastern District of Wisconsin, and the amended judgment in that case required that he pay restitution in the amount of $1,200,447.70, as well as a $500 special assessment. (Dkt. No. 1-2.)[1] He has paid the special assessment, but still owes a significant portion of the restitution award. (Dkt. No. 21 (showing an outstanding on the balance of the restitution only as of March 25, 2015, in the amount of $681,827.60).)

Silvious served his original term of imprisonment and was released to serve his three-year term of supervised release. In March 2015, jurisdiction over the defendant was transferred to this court. On May 15, 2015, the court entered a judgment revoking Silvious's supervised

---

[1] The court there originally imposed a restitution amount of $1,170,000, but later entered an order on restitution and an amended judgment reflecting the updated amount. *United States v. Silvious*, No. 1:05-cr-74 (E.D. Wis.), Dkt. Nos. 39, 54, 55.

release term after finding him guilty of violating the terms of his release. The court imposed a seven-month term of custody in the Bureau of Prisons, to be followed by a supervised release term of twenty-nine months, but otherwise left intact all aspects of the original judgment, including Silvious's restitution obligations. (Judgment, Dkt. No. 25.) Like the amended judgment in his criminal case, this court's judgment ordered that he pay $100 monthly while on supervision. (*Id.* at 6.)

After serving his seven-month sentence, Silvious was released from custody and began his current supervised release term. In May 2016, the monthly amount of his payment was increased by the court to $200, after Silvious and his probation officer agreed to this amount and the probation officer requested the change. (Dkt. No. 26; *see also* Motion 4, Dkt. No. 28 (noting that the $200 monthly payment was "mutually agreed by Silvious and [his probation officer]").) Then, in May 2017, the United States, through its Treasury Offset Program (TOP), began deducting from his monthly social security benefits a monthly payment of $93.00, consisting of $78.00 in payment toward restitution and a $15.00 fee. It is this TOP deduction from his social security benefits that Silvious challenges in his motion.

## II. DISCUSSION

The TOP program

> authorizes the Treasury Department "to collect non-tax debts by withholding funds paid out by other federal agencies." *Reeves*, 526 F.3d at 738 n.3; *see* 31 U.S.C. § 3716(a); 31 C.F.R. § 285.5. Pursuant to the TOP, any federal agency with a claim against the debtor, after notifying the debtor that the debt is subject to administrative offset and providing an opportunity to dispute the debt or make arrangements to pay it, may collect the debt by administrative offset. *See* 31 U.S.C. § 3716(a), (c)(6). In order to do so, the creditor agency must certify to Treasury that the debt is eligible for collection by offset and that all due process protections have been met. *See* 31 C.F.R. § 285.5(d)93)(ii), (d)(6). If properly certified, the Treasury Department must administratively offset the debt. *See* 31 U.S.C. § 3716 (c)(1)(A).

*Johnson v. U.S. Dep't of Treasury*, 300 F. App'x 860, 862 (11th Cir. 2008) (footnotes omitted).

Silvious admits that "it is true that the United States Attorney can have deductions made from [s]ocial [s]ecurity benefits" to satisfy restitution obligations, but he contends that the TOP offset against his social security benefits is nonetheless improper for two independent reasons. First, he argues that his debt was not delinquent for 180 days because he has been making regular payments on his restitution obligations, and thus the prerequisites for offset have not been satisfied. (Dkt. No. 28 at 3–4.) Second, he claims that he did not receive any notice from the United States Attorney for the Western District of Virginia and that such notice is required before the offset can begin.

In his motion, he cites to, attaches, and relies on 31 U.S.C. § 3716(a) and 31 C.F.R. § 285.4(d) as requiring notice to him. In pertinent part, that statute and regulation require two types of notice. The first is a pre-offset notice, which the United States Attorney's office was to give to Silvious, informing him of the type of payment that would be offset, among other information. 31 C.F.R. § 285.4(f)(1). The United States Attorney's office then had to certify to the Department of the Treasury that "the debt is past-due, legally enforceable, and that the creditor agency has provided the debtor with notice and an opportunity for a review in accordance with the provisions of 31 U.S.C. § 3716(a) and other applicable law." *Id.* The second type of notice is a post-offset notice, in which the official conducting the offset must notify Silvious of the occurrence of the offset. 31 C.F.R. § 285.4(f)(2).

The United States filed a written response opposing Silvious's motion. The United States contends that Silvious was given notice of the offset on January 5, 2007, by the Financial Litigation Unit in the Eastern District of Wisconsin, and that he was placed in the TOP program 60 days after that notice. The United States maintains that he was properly placed in this program, that his current payments of $200 are not a substitute for the TOP offset, and that his

3

recent financial statements show that "his financial status is sufficient" to meet both obligations. (Response 2, Dkt. No. 29.)

In his reply, Silvious disputes that he ever received pre-offset notice and further disputes that he was placed in the TOP program prior to 2017. He repeatedly accuses the United States Attorney for the Western District of Virginia of "intentionally and willfully" violating the notice requirements and failing to comply with the necessary statutes.

Regardless of the merits of Silvious's position, the court concludes that the issue of whether the offset was proper is not properly before the court as part of Silvious's criminal action. Instead, the TOP program itself provides for various administrative procedures for challenging the application of an offset. *Benjamin v. United States*, No. 3:13-cv-313, 2014 WL 3900220, at *5 (M.D. Pa. 2014). If a plaintiff has failed to obtain relief through that process, then he may file an action in federal court challenging the offset decision. *Id.* Some courts have also reasoned that district courts have jurisdiction to consider, in a civil action, a stand-alone that an offset was improper because the pre-offset notice requirements were not satisfied. *See, e.g., Omegbu v. U.S. Dep't of Treasury*, 118 F. App'x 989, 990 (7th Cir. 2004). But addressing the challenged offset in the context of Silvious's criminal case is not appropriate, especially since he does not challenge the propriety of the restitution award itself. Put differently, while the offset is being used to satisfy his restitution obligations, his challenges to the offset are separate and independent from any matter in his criminal case.

Furthermore, Silvious's claims of financial hardship do not alter the court's conclusion. While his economic circumstances are relevant to a determination of an appropriate monthly payment as a condition of his supervised release, *see* 18 U.S.C. § 3572(d), they do not provide a basis for the court to modify a TOP offset amount. As a sister court has recognized, the government under TOP is limited to collecting a certain percentage of a defendant's social

security benefit, and "[n]o inquiry into [d]efendant's individual needs is provided for by statute." *United States v. Weissenbach*, No. 3:08-cr-172-1, 2010 WL 2246177, at * 2 (W.D.N.C. June 2, 2010). Moreover, to the extent he claims financial hardship, the court has reviewed the June 9, 2017 financial statement Silvious provided to the probation office and concludes that he can afford to pay both the $200 monthly payment as a condition of supervised release and the TOP offset.

Even if it were properly before the court as part of his criminal case, Silvious cannot establish that the offset is illegal or improper. First of all, his argument that his debt is not delinquent misses the mark. The judgment in his case indicated that the restitution was "due immediately," but then provided it was "payable" on a certain schedule. The fact that the court implemented a payment plan, however, does not change the fact that the debt was due as of the entry of judgment, back in 2005. Accordingly, his debt clearly has been "delinquent" for more than 180 days, and that criterion is satisfied. The same argument made by Silvious was rejected by the United States Court of Federal Claims in *Greene v. United States*, 124 Fed. Cl. 636 (Fed. Cl. 2015). As the *Greene* court reasoned, the plaintiff in that case owed a criminal fine and it was past due because it was not paid immediately, regardless of whether he timely made his payments on the schedule set forth in his judgment. *Id.* at 644. "[T]he establishment of a payment schedule does not preclude the government from undertaking collection activity, such as referral of a debt to the TOP for offset." *Id.*; *see also United States v. James*, 312 F. Supp. 2d 802, 806–07 (E.D. Va. 2004) (reasoning that where criminal restitution was "due and payable immediately" but a payment schedule was put in place, "the existence of this schedule does not mean that the government is precluded from pursuing other avenues of ensuring that defendant's restitution obligation is satisfied").

5

As to the alleged lack of notice, Silvious does not dispute that the United States Attorney's Office mailed a notice of intent to offset to him, in 2007, at P.O. Box 5000, 201 FCI Lane, Glenville, WV 26351, as the United States has explained.[2] Instead, he simply says that the address contains the wrong post office box number and thus that he never received it. According to Silvious—and the Bureau of Prisons website—staff mail for FCI Gilmer should be sent to P.O. Box 5000, but the proper address for inmate mail is P.O. Box 6000. *See* https://www.bop.gov/locations/institutions/gil/ (last visited July 12, 2017).

Reasonable attempts to provide notice of the offset are generally sufficient, however, even if actual notice is not received. In *Greene*, for example, the court explained that a notice of intent to offset sent to the address on file for the plaintiff satisfied the requirement of notice because "the likelihood of actual receipt . . . is not the relevant standard." 124 Fed. Cl. at 644 (quoting *Kipple v. United States*, 105 Fed. Cl. 651, 656 (Fed. Cl. 2012)). Instead, notice was satisfied where the government sent notification to the file address because only a "reasonable attempt" to notify is required. *Id.* (collecting authority). Indeed, even the regulation attached by Silvious to his motion provides that "[n]on-receipt by the debtor of the notices described in paragraphs (f)(1) and (f)(2) of this section [*i.e.*, the pre-offset and post-offset notice] shall not impair the legality of the administrative offset." 31 C.F.R. § 285.4(f)(3). Here, mailing to the prison where Silvious was incarcerated, and to an address presumably on file, may well have been adequate notice under the reasoning of *Greene* and *Kipple*, assuming the notice contained the required information. Notably, Silvious also admits that he received adequate post-offset notice. (Motion 1 (referencing May and June 2017 letters he received); *id.* at Exhibit 1 (copies of letters).) In light of these facts and authorities and the current scant record, the court certainly

---

[2] The government's response states that such mailing occurred (Resp. at 1), although it did not provide a declaration to that effect or a copy of the actual notice mailed. The court cannot confirm, therefore, whether the notice included the required information concerning the forthcoming offset.

cannot say at this time that notice given here was inadequate.[3] But in any event, because his motion is not properly before the court as part of his criminal case, the court need not reach any final determination as to the adequacy of notice here.

### III. CONCLUSION

For the reasons described above, the court determines that Silvious's motion is not properly brought as part of his criminal case. The court will therefore deny the motion without prejudice.

Entered: August 1, 2017.

/s/ Elizabeth K. Dillon
Elizabeth K. Dillon
United States District Judge

---

[3] Neither party has provided any authority as to whether a notice mailed in 2007, when he was not even receiving social security benefits, is sufficient notice of payments that are not going to be offset until 2017. Relatedly, Silvious argues in his reply that he "was never actually placed in the Treasury Offset Program . . . because there were no Social Security Benefits that could be deducted under the TOP." He provides no authority to show that he was not placed in the TOP program at that time, or that the notice is insufficient or inapplicable if a person is not currently receiving the specific type of benefit to be offset. In the event that Silvious were to file a separate lawsuit challenging the propriety of the offset (as opposed to a motion in his criminal case), the government will likely have to produce a copy of the purported notice (or a sample thereof), and the issues concerning the timing of the notice and its applicability to future benefits could be explored in more detail.